IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | CR. No.: 1:05CR50-CSC & 1:05CR118-CSC |
| | ) | |
| **CALVIN FLOWERS** | ) | |

**APPEAL OF CONVICTION AND SENTENCING JUDGEMENT**

**I.     PROCEDURAL HISTORY**

On February 28, 2005, Calvin Flowers ("Mr. Flowers") was charged in an information with unlawfully taking a wrist watch from the Fort Rucker, Alabama military installation in violation of 18 U.S.C. §641. (R1-1). This information is filed under case number 1:05CR50-CSC. On May 3, 2005, Mr. Flowers was charged in a two count information with taking tobacco products, and trespassing upon a military installation in violation of 18 U.S.C. §641 and 18 U.S.C. §1382. (R1-1). This information is filed under case number 1:05CR118-CSC. Although these two cases were never consolidated under one case number, all of the proceedings in both cases were addressed simultaneously at each of Mr. Flowers' subsequent court hearings.[1]

On May 17, 2005, Mr. Flowers had an initial appearance hearing, arraignment hearing, and entered a plea of not guilty. (R1-5). On June 30, 2005, Mr. Flowers' Notice of Intent to Change Plea was filed. (R1-11). Pursuant to the terms of a plea agreement, on July 14, 2005, Mr. Flowers entered a plea of guilty to the charges contained in the information. (R1-14). Also on July 14, 2005, Mr. Flowers was sentenced to two consecutive six month terms of imprisonment, and a total term of two

---

[1] For the sake of clarity, citations to the record will only be referenced to the Certificate of Readiness of Record On Appeal for case number 1:05CR50-CSC.

years supervised release. (R1-14). On July 15, 2005, an Unopposed Motion to Correct Sentence was filed by Mr. Flowers, asking that concurrent terms of supervised release be imposed. (R1-16). That motion was granted on July 18, 2005. (R1-17).

On December 8, 2006, a United States probation officer filed a Petition for Revocation of Supervised Release ("Petition for Revocation") against Mr. Flowers. (R1-19). The Petition alleged that between December 5, 2006 and January 15, 2007 Mr. Flowers violated the terms of his supervised release by being arrested and charged with disorderly conduct, throwing objects at a moving vehicle, menacing, criminal mischief in the third degree, criminal trespassing in the third degree, and assault in the third degree. (R1-19).

Mr. Flowers' initial appearance was held on March 23, 2007. (R1-25). On April 2, 2007, Mr. Flowers' preliminary examination and revocation hearing was held. (R1-30). Although this court found that Mr. Flowers was not guilty of disorderly conduct, he was adjudicated guilty of the remaining allegations in the Petition for Revocation. (R1-31). His term of supervised release was revoked, and he was sentenced to a twelve month term of imprisonment for each of the two cases under which he had been sentenced. (R1-31, R2-60). The terms were set to run concurrently. (R1-31, R2-60). Mr. Flowers timely filed a Notice of Appeal on April 6, 2007. (R1-32). Mr. Flowers is currently incarcerated.

## II.   STATEMENT OF THE FACTS

Mr. Flowers suffers from post-traumatic stress disorder, paranoid schizophrenia, and bipolar disorder. (R2- 4, 19). He has been prescribed Depakote and Seroquel to treat these disorders. (R2-4). Due to Mr. Flowers' erratic behavior while on supervised release, he was arrested and charged with violating several criminal statutes. (R1-27).

### III. ARGUMENT AND CITATIONS OF AUTHORITY

### A. THIS COURT FAILED TO CONSIDER MR. FLOWERS' INSANITY AT THE TIME OF HIS SUPERVISED RELEASE VIOLATIONS AS A MITIGATING CIRCUMSTANCE THAT EXCUSED HIS BEHAVIOR PRIOR TO REVOCATION OF RELEASE WAS AN ABUSE OF DISCRETION.

At the outset of the revocation hearing, Mr. Flowers notified this court that he had been treated for mental illness, that he suffered from post-traumatic stress disorder, and that he was diagnosed with bipolar disorder between 1989 and 1990. (R2- 3-4). Mr. Flowers told the court that he had recently received mental health treatment. (R2- 3). He further notified the court that he was taking prescription medications for his mental illnesses, Depakote and Seroquel.[2] (R2- 4).

This court found that Mr. Flowers' conduct on supervised release was as a grade B violation, and that his criminal history category was V. (R2- 60). Pursuant to United States Sentencing Guideline§7B1.1, the court calculated the guidelines, revoked supervised release, and found that a sentence of twelve months imprisonment for each of Mr. Flowers' pending cases, set to run concurrently, was reasonable. (R2- 60). The court did not discuss its consideration of the factors under 18 U.S.C. §3553(a), except to say that it had "evaluated the reasonableness of [the] sentence through the lens of 18 United States Code Section 3553." (R2-60).[3] This court also did not provide

---

[2] Depakote is a drug used to control the manic emotional episodes associated with bipolar disorder, as well as treat seizures and convulsions. Seroquel is used to treat schizophrenia, as well as acute manic episodes associated with bipolar disorder. *Drugs.com, Drug Information Online* (last modified May 14, 2007)<http://www.drugs.com/pdr/depakote.html>; <http://www.drugs.com/cdi/seroquel.html>.

[3] This court has held that "when revocation of supervised release is mandatory under 18 U.S.C. § 3583(g), the statute does not require consideration of the § 3553(a) factors." *United States v. Brown*, 224 F.3d 1237, 1241 (11th Cir. 2000). United States Sentencing Guideline§7B1.3(a)(1) mandates that supervised release be revoked upon a finding of a grade B violation. This court found Mr. Flowers guilty of a grade B violation.

any discussion concerning its consideration of any facts, mitigating circumstances, or legal principles prior to revoking release, other than its singular mentioning of U.S.S.G. §7B1.1 and 18 U.S.C. §3553(a). (R2- 58-61). In fact, immediately after the closure of arguments by the parties, this court found Mr. Flowers guilty of all but one supervised release violation, and revoked release. (R2-58).

Eleventh Circuit precedent holds,

> Once the district court has determined that the probationer has violated his probation, it must determine whether the violation warrants revocation. (citation omitted). In assessing the probationer's conduct, the district court should consider whether the probationer made a "good faith" effort to comply with the terms of his probation and whether there are mitigating circumstances which excuse his noncompliance.

*United States v. Holland*, 874 F.2d 1470, 1473 (11th Cir. 1989). See also *United States v. Connally,* 2007 WL 1265942 (11th Cir. 2007)(applying this same standard in the supervised release context, and explaining that "[a]lthough *Holland* is a probation revocation case, probation and supervised release are conceptually the same, and this Court treats revocations the same whether they involve probation or supervised release. (*quoting United States v. Fraizer*, 26 F.3d 110, 113 (11th Cir. 1994)). Thus, a "trial court can not revoke an appellant's [supervised release] unless it is positively and clearly shown that failure to meet the condition was due to the appellant's neglect or default." *United States v. Savage*, 440 F.2d 1237, 1239 (5th Cir. 1971).[4]

The standard pronounced in *Savage* and *Holland* has been applied in various factual circumstances, and in cases involving diverse kinds of supervised release and probation violations. See *United States v. Savage,* 440 F.2d 1237(5th Cir. 1971)(where a probationer was charged with violating the conditions of his probation for failing to pay restitution); *United States v. Holland*, 874

---

[4] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

F.2d 1470 (11th Cir. 1989)(where a probationer was charged with violating the conditions of his probation for failing to cease engaging in maritime contracting); and *United States v. Connally*, 2007 WL 1265942 (11th Cir. 2007)(where the appellant was charged with violating the conditions of his supervised release for failing to report, lying, failing to produce evidence of employment, and for leaving the jurisdiction and associating with convicted felons without permission). However, none of these cases involved appellants that were mentally ill at the time of their violations.

Evidence presented at Mr. Flowers' revocation hearing establishes that his failure to meet the conditions of his supervised release was not due to his neglect or default, but instead was attributable to his mental illness. Over the advice of defense counsel, Mr. Flowers offered testimony in his own defense. (R2- 44). Mr. Flowers did not dispute that he committed some of the acts alleged in the petition to revoke his supervised release. (R2-53). Instead, he attempted to explain his behavior surrounding allegations that he threw a bottle at a moving vehicle, was trespassing at a Veteran's Administration facility, and that he threw a breakfast tray at a guard at a city jail. However, what resulted was confused recountings of events, and recollections of paranoid delusions of threats to his life.

A specific portion of Mr. Flowers' testimony includes an admission that at the time of his supervised release violations, he was hallucinating. Mr. Flowers was seeing strange things, and he felt he needed help.

> A. . . . And I don't know what was going on in Daleville, but I walked in my bank and there were these strange things that were looking – were looking at me, you know. I went to Tuskegee because I thought maybe I was hallucinating. And there were strange things going on, and I needed some help.

(R2-52). Other areas of Mr. Flowers' revocation hearing testimony further demonstrate that his

5

behavior on supervised release was prompted by paranoid delusions and hallucinations.

Mr. Flowers testified that he threw a bottle at a moving vehicle because he believed he was about be run over by the driver. (R2- 44-46).

> A.: Yes. The only thing that I might - - that might be relevant with these officers is that I had been through so many things that maybe I threw one bottle and it broke somebody's windshield okay? And that is the only thing that I might be guilty of. But this guy got out of his truck, also, and he has a gun. That's why I opened my knife. That's what he did. And I was hiding behind the bushes while he had a gun. No one knew that. . . .

(R2-52).

He testified that he wanted to leave Daleville, Alabama because "people" had attempted to kill him. (R2- 46). He stated that "these people in Daleville, they tried to strangle me and kill me. There were 15 witnesses." (R2- 52). When asked on direct examination, "Why did you feel your life was in danger in Daleville?," Mr. Flowers provided a nonsensical response that neither addressed the identity of the people he believed tried to kill him, nor the witnesses that he believed saw the attempt on his life. (R2- 46).

> Q.: Why did you feel your life was in danger in Daleville?
> A.: Because the way I was treated in the police department the night before. The reason - - the way that I was treated in the parking lot when I was in the - - in the - - in the store, the grocery store shopping. They called me out of the store when I wasn't doing anything wrong in the store, and I - - they said someone called them. So who called them? The man in the store didn't have any problems with me putting my groceries on the counter and receiving my money.

(R2- 46).

When asked to explain why he was being accused of trespassing at a Veteran's Administration facility in Tuskegee, Alabama, Mr. Flowers gave another jumbled response that again referenced paranoid delusions that someone was trying to harm him.

6

> Q.: . . . Could you explain to the Court the circumstances leading to your - - the allegation that you trespassed at the VA?
>
> A.: Yes. I got run over at the VA in Tuskegee.
>
> Q.: So someone else tried to run you over at the VA in Tuskegee.
>
> A.: Yes. I got hit by a car. And I went back to the VA at Tuskegee because the police at Tuskegee ran me off the VA. Okay. I have not been to the VA since I was in prison. I wasn't aware that the VA was not open on the weekends. I went there and I played bingo on Sunday, and they told me I had to leave. And they had did that Saturday; but I didn't know it was like that Saturday, because they had bingo. So I came back Sunday, and I played bingo. But on Saturday, they took me to the top of the hill. On Sunday, they made me walk, and then I was hit by a car. That was kind of strange. I went back to the VA because I wasn't going up that road. It was about a mile.
>
> Q.: And I'm sorry. I'm a little confused. Let's do it this – in order of how it happened. On Saturday you went to the VA to play bingo?
>
> A.: No. On Saturday I went to the bingo (sic) for medical treatment, because Friday I didn't get finished. But I wasn't aware they weren't open. So they told me I had to leave, and they took me to the top of the hill, which is about a mile.
>
> Q.: Is there - -
>
> A.: And I appreciated it.

(R2-47-48). Mr. Flowers later recounted getting hit by a car and hiding from the driver in some nearby bushes.

> A.: . . . I got hit by a car. And when the car hit me, I heard the car turn around. I got in the bushes, and this guy came back and got out of the car with a gun. And I was hiding in the bushes, and I was not going up that road. I went back to the VA and made them call an ambulance and take me to Montgomery.

(R2-47-48).

When asked to explain allegations that he threw a breakfast try at a guard at a city jail, Mr. Flowers asserted his belief that someone was trying to poison him.

7

> Q.: Okay. While you were at the city jail, they're reporting that you got involved in an incident with a guard. Could you describe – involving a breakfast try.
>
> A.: Yes I - - yes. I got poisoned first there.
>
> Q.: By people at the city jail?
>
> A.: Yes. And I was very leery of the food that I was eating.
>
> Q.: So - -
>
> A.: I had diarrhea, and the nurse was aware of all this. You know what I'm saying? And I wanted to see what was in the tray before he gave it to me. I did not throw a tray on anybody?
>
> Q.: How long had that poisoning being going on at the city jail?
>
> A.: Well, I'm saying I only was poisoned one time. And the nurse will tell you - - it was a Nurse Davis - - that I had diarrhea and vomiting and everything for about three days, and nausea. And yes, I was very leery of the food that was about to eat. I wanted to see what was in the tray. And I pushed the tray back at him, and the grits came out on his arm. But the grits there was not hot enough to burn anybody.

(R2-51).

Mr. Flowers' mental illness at the time of his supervised release violations is a mitigating circumstance that warranted consideration by this court as to whether Mr. Flowers' mental illness excused his noncompliance with the conditions of his release. However, the revocation hearing transcript in this case is devoid of any indication that this consideration was undertaken by this court before Mr. Flowers' supervised release was revoked.

Defense counsel specifically argued that Mr. Flowers' supervised release should not be revoked because, "Mr. Flowers did not understand the nature of his conduct or appreciate its wrongfulness and was not sane at the time of the offense." (R2- 56). However, this court never addressed this argument. This court only discussed Mr. Flowers' sanity within the context of whether

he was competent to proceed with a revocation hearing.

At the outset of the hearing, this court made a finding that Mr. Flowers' was competent to proceed with the revocation hearing.

> THE COURT: You're correct. Now, Mr. Butler, I have observed Mr. Flowers. While he seems to have some misunderstanding about the factual nature or basis of these charges, he seems to understand the Court's questions and answered them directly. And based on my observation of him, I find no reason presently to believe that he is not competent to proceed.

(R2-8). At the conclusion of all witness testimony, defense counsel raised the issue of Mr. Flowers' insanity at the time of his supervised release violation.

> MR. BUTLER: Your Honor, given the nature of his testimony, I would just ask the Court to take into consideration in possibly reconsidering the issue that was presented to Your Honor in chambers. There are some consistent themes regarding persons who were trying to harm him. I don't know if those - -

(R2-54-55). The district court interrupted counsel to respond by discussing whether Mr. Flowers was legally competent to have a revocation hearing.

> THE COURT: Mr. Butler, there's a difference between being competent within the legal definition of that meaning, meaning that he has the capacity to understand what is going on. I think he has that capacity.

(R2- 55). In failing to address the specific argument being raised by defense counsel, this court appears to make a finding of fact that Mr. Flowers is mentally insane.

> THE COURT: I think he has the capacity to assist in his own defense. It is obvious that Mr. Flowers, however, is suffering from some mental disturbance; and I would venture to say that in the - - my unschooled knowledge, that he among other things and his bipolar disorder, also has some paranoia.
>
> MR. BUTLER: Yes, Your Honor.
>
> THE COURT: But notwithstanding that, there is nothing that I have heard to indicate that he is not aware and competent to assist in his own defense.

(R2-55).

Defense counsel then argued that Mr. Flowers' insanity at the time of his supervised release violations was a mitigating fact that excused Mr. Flowers' non-conformation with the conditions of release.

> MR. BUTLER: . . . It is our position, however, Your Honor, that at the time of the incidents, as is evident by the extensive record - - court record in this case, which I believe the Court has available to it, that Mr. Flowers did not understand the nature of his conduct or appreciate its wrongfulness and was not sane at the time of the offense.
>
> Mr. Flowers can communicate and articulate his perceptions of what is going on clearly, and I think people sometimes confuse that with the fact that he must be fine. But I think he was under delusions, paranoid delusions, at the time of the throwing incident, Your Honor, at the time of the failure-to-pay incident, Your Honor, as well as the time at the city jail. Specifically, he was under the impression that people were trying to poison him at the city jail; that individuals were trying to run him over at the Tuskegee facility, at which time he was charged with trespassing; and Your Honor, that the individual, the victim, was trying to run him over at the time of the December 6th incident. Its therefore our position that he is not guilty of the offenses.

(R2- 56). Yet, this court never addresses whether Mr. Flowers' insanity was a mitigating circumstance that excused his noncompliance with the conditions of his supervised release.

Other circuits have held that revocation of supervised release and the imposition of a term of imprisonment is not unreasonable if a defendant violated the conditions of release due to a mental illness. See *United States v. Mackie*, 173 Fed. Appx. 427 (6th Cir. 2006), *United States v. Jones*, 133 Fed. Appx. 824 (3rd Cir. 2005), and *United States v. Pinjuv*, 218 F.3d 1125 (9th Cir. 2000). The Third Circuit has also held that supervised release can be revoked for reasons that have nothing to do with the fault of the offender, but instead are more related to protection of the public." *United States v. Jones,* 133 Fed. Appx. at *2 (citing *United States v. Loy*, 237 F.3d 251, 260 (3rd Cir. 2001)).

None of these cases have binding or persuasive authority in this Circuit. See *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003)(holding that "only Supreme Court cases, Eleventh Circuit case law, and Georgia Supreme Court case law can 'clearly establish' law in this circuit."). Therefore, these cases should not be considered by this Court.

In addition, *United States v. Mackie* is an unpublished decision that is not binding precedent in the Sixth Circuit. *Rosales-Garcia v. Holland,* 238 F.3d 704, 715 (6th Cir. 2001). *United States v. Jones* is an unpublished opinion that has been labeled as "not precedential" by the Third Circuit. See *United States v. Jones*, 133 Fed. Appx. at 824. Multiple courts have distinguished *United States v. Loy* or declined to follow or extend the case opinion. In the only two state court cases in which *United States Loy* is applied, the case holding is applied with reference to the portion of the opinion in which it is held that a prohibition against probationers possessing pornography is void for being unconstitutionally vague. *United States v. Pinjuv* has never been cited by or relied on by any court of appeal outside of the Ninth Circuit. Within the Ninth Circuit, the opinion has only been cited in five cases, and mentioned in one case. Yet, in none of these cases was *United States v. Pinjuv* cited to or mentioned for its holding regarding the revocation of supervised release where release violations were attributable to the appellant's mental illness.

Furthermore, each of the other circuit cases are factually distinguishable from the present case in that evidence was presented in these other cases to establish that the appellant was either a danger to the public or his/herself, and that a term of imprisonment was the *only* way to provide protection from or for the appellant. See *Mackie*, 173 Fed. Appx. at 429 ("We agree the circumstances seem tragic that a mentally ill person who violates the terms of his supervised release must go to prison to protect himself and the public rather than being able to receive adequate care outside prison walls.

However, in this case, there seemed to be no other practical alternative to provide proper care for Mackie."). In this case, no evidence was introduced, and no arguments were made by either of the parties that Mr. Flowers is a danger to himself or to the public. This court also did not sua sponte make any findings of fact that Mr. Flowers' mental illness made him dangerous.

The evidence of this case shows that Mr. Flowers did not have control over his actions at the time of the alleged supervised release violations due to the paranoid delusions and hallucinations he was experiencing. Mr. Flowers' violations were not due to any deliberate, rational acts. This mitigating circumstance clearly excuses Mr. Flowers' noncompliance with the conditions of his release under Eleventh Circuit precedent. Despite acknowledging that Mr. Flowers is mentally ill, this court failed to make any considerations as to whether that mental illness excused Mr. Flowers' behavior. Instead, the court ignored its duty to make such a consideration prior to revoking Mr. Flowers' supervised release.

This court's revocation of Mr. Flowers' supervised release was in contradiction to Eleventh Circuit precedent that a "trial court can not revoke appellant's [supervised release] unless it is positively and clearly shown that failure to meet the condition was due to the appellant's neglect or default." *United States v. Savage*, 440 at 1239. As revocation of supervised release in this case violates Eleventh Circuit precedent, this court abused its discretion. Therefore, the revocation and sentence imposed in this case should be vacated, and the case remanded to this court.

**B.    DUE TO MR. FLOWERS' MENTAL INCOMPETENCE, THE SENTENCE IMPOSED IN THIS CASE WAS NOT REASONABLE AND IS GREATER THAN NECESSARY TO FULFILL THE PURPOSES OF SENTENCING.**

Prior to this court's imposition of sentence, defense counsel argued that continued supervised release with a provision that Mr. Flowers be designated to a local mental health facility was an

appropriate sentence. (R2- 56-57). Defense counsel also argued that designation of Mr. Flowers to a mental health facility outside of the district for six months was an appropriate alternative sentence. (R2-57). In agreement with defense counsel, counsel for the government argued that Mr. Flowers' supervised release should be extended in lieu of imprisonment.

> MS. RUISANCHEZ: The probationer in this case - - his criminal history in addition to the recent allegations just clearly warrant the need for - - for further - - not confinement, but for further close supervision.
>
> ***
>
> Because of all these reasonings, the government requests that his current condition - - or that his current term of supervised release be revoked and that he do or that he continue to be placed in probation for an additional 12 months Your Honor.

(R2- 57-58). Yet, this court sentenced Mr. Flowers to two concurrent twelve month terms of imprisonment. (R2- 60). The court recommended that Mr. Flowers be designated to a prison where he can receive mental health and drug counseling.[5] (R2- 60). The court stated that "a sentence of 12 months for a grade B violation is the only reasonable sentence in this case." (R2- 61)(emphasis added). However, the sentence imposed in this case is unreasonable because it is not justified by the facts and circumstances of the case.

An appropriate sentence should be fashioned so that it addresses the sentencing goals of rehabilitation, deterrence, protection of the public, training, and treatment. *United States v. Rodriguez*, 406 F.3d 1261, 1286 (11th Cir. 2003)(holding that "the underlying goals of [ 18 U.S.C. §3553] and the Guidelines are 'retribution, general deterrence, incapacitation, and rehabilitation.'"). 18 U.S.C. §3583(d) grants district courts the authority to impose conditions on a defendant as long

---

[5] The Petition for Revocation filed in this case does not allege that Mr. Flowers' behavior was related to the abuse of prescriptions drugs or illegal substances. None of the alleged violations assert that Mr. Flowers was in possession of any kind of drug. No allegations were made during the revocation hearing that Mr. Flowers has a substance abuse problem.

as those conditions are "reasonably related" to these goals, and it "involves no greater deprivation of liberty than is reasonably necessary." Although general deterrence is relevant in this case, Mr. Flowers' mental illness elevated the appropriateness of a sentence that accurately addressed Mr. Flowers' need for rehabilitation and mental health treatment.

In this case, the imposition of a year long term of imprisonment, with the recommendation that Mr. Flowers be designated to a facility offering mental health treatment, addresses the sentencing goals of deterrence and rehabilitation, but does so in a manner that involves the greatest deprivation of Mr. Flowers' liberty. Under the facts of this case, the impetus for Mr. Flowers' behavior is his mental illness. Mental health treatment and restoration of Mr. Flowers' mental faculties while on continued supervise release would result in deterring him from future inappropriate behavior. Thus, extending Mr. Flowers' term of supervised release with the condition that he receive mental health counseling or be designated to a mental health facility addresses the sentencing goals of deterrence and rehabilitation, but does not involve the extended deprivation of Mr. Flowers' liberty that comes with imprisonment.

United States Sentencing Guidelines §5D1.3(d)(5), governing the special conditions that can be attached to a term of supervised release, specifically provides that participation in a mental health program can be required "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment." This court in this case made a finding of fact that Mr. Flowers suffered from various mental illnesses, including bipolar disorder and paranoid delusions.(R2- 55). 18 U.S.C. §§3583(e), also addressing modification of conditions and revocation of supervised release, "contemplate[s] that reimprisonment is not the only possible punishment for violation of post-release supervision. Specifically, this court may 'extend a term of supervised

release,' §3583(e)(2), and/or 'order the defendant to remain at his place of residence during nonworking hours,' §3583(e)(4)." *United States v. Cenna*, 448 F.3d 1279, 1281(11th Cir. 2006).

Mr. Flowers' behavior on supervised release was caused by his mental illness and not by any deliberate intent on his part to ignore the conditions of his release or otherwise act inappropriately. Adequate punishment for his failure to follow the conditions of his supervised release could have been achieved by extending his term of supervised release with the condition that he receive mental health treatment. Instead, this court sentenced him to a year imprisonment, with the recommendation that he be designated to a facility that offers mental health and drug counseling. (R2- 60). The imposition of a year long term of imprisonment in this case was greater than necessary to achieve the purposes of deterrence and rehabilitation. Furthermore, the sentence place too great a deprivation on Mr. Flowers' liberty than is reasonablely necessary in this case. Thus, the revocation and sentence in this case is an abuse of the court's discretion, and this case should be remanded.

## **CONCLUSION**

For the reasons set forth above, Calvin Flowers' revocation of supervised release and sentence must be vacated and this matter remanded to the United States District Court for the Middle District of Alabama.

                                                  Respectfully submitted,

**s/ Kevin L. Butler**
KEVIN L. BUTLER
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| V. | ) | CR. No.: 1:05CR50-CSC & 1:05CR118-CSC |
| | ) | |
| **CALVIN FLOWERS** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Emily M. Ruisanchez
Special Assistant U.S. Attorney
Office of the Staff Judge Advocate
Soldier Service Center, Building 5700
Fort Rucker, Alabama 36362

Respectfully submitted,

**s/ Kevin L. Butler**
KEVIN L. BUTLER
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138