IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No: 1:05-CR-00050-WKW & |
| | ) | 1:05-CR-00118-WKW |
| CALVIN FLOWERS | ) | |

**GOVERNMENT RESPONSE TO APPEAL OF CONVICTION
AND SENTENCING JUDGEMENT**

I. **PROCEDURAL HISTORY**

On February 28, 2005, Calvin Flowers ("Mr. Flowers") was charged with unlawfully taking a wrist watch from the US military installation at Fort Rucker, Alabama, in violation of 18 U.S.C. § 641. (R1-1). This information was originally filed under case number 1:05-CR-00050-CSC. On May 3, 2005, a second information was filed, charging Calvin Flowers with two counts, to wit: taking tobacco products and trespassing upon a military installation, in violation of 18 U.S.C. § 641 and 18 U.S.C. § 1382, respectively. (R1-1). The case number for the second information was originally filed as 1:05-CR-00118-CSC. The proceedings in both cases were addressed at each of Mr. Flowers' subsequent court hearings, although the cases were never consolidated under one case number.

On May 17, 2005, Mr. Flowers had his initial appearance and arraignment hearing, and entered a plea of not guilty. (R1-5). On June 30, 2005, Mr. Flowers filed a Notice of Intent to Change Plea, and pursuant to a plea agreement with the Government on July 14, 2005, Mr. Flowers entered a plea of guilty. (R1-11, R1-14). On July 14, 2005, Mr. Flowers was sentenced to two consecutive six month terms of imprisonment with a total of two years supervised release. (R1-

1

14). On July 15, 2005, Mr. Flowers filed an Unopposed Motion to Correct Sentence, asking that concurrent terms of supervised release be imposed. (R1-16). The motion was granted on July 18, 2005. (R1-17).

On December 8, 2006, a United States probation officer filed a Petition for Revocation of Supervised Release against Mr. Flowers. (R1-19). The Petition alleged that Mr. Flowers violated the terms of his supervised release, by being arrested and charged with disorderly conduct, throwing objects at a moving vehicle, menacing, criminal mischief in the third degree, criminal trespassing in the third degree, and assault in the third degree. (R1-19).

On March 23, 2007, Mr. Flowers had his initial appearance. (R1-25). On April 2, 2007, a preliminary examination and revocation hearing was held. (R1-30). The Court found Mr. Flowers not guilty of disorderly conduct, and guilty of the five remaining allegations in the Petition for Revocation of Supervised Release. (R1-31). The Court revoked Mr. Flowers' supervised release and sentenced him to a twelve month term of imprisonment to be served concurrently for each of the two cases for which he was sentenced. (R1-31, R2-60).

Mr. Flowers filed a Notice of Appeal in the District Court for the Middle District of Alabama on April 6, 2007. (R1-32). Mr. Flowers filed his initial appeal with the United States Court of Appeals, Eleventh Circuit, on July 21, 2007. On July 25, 2007, the United States filed a Motion to Dismiss with the Eleventh Circuit Court of Appeals pursuant to Federal Rule of Criminal Procedure 58, since an appeal of the final judgment and conviction imposed by the Magistrate Court was due to be filed on the District Court for the Middle District of Alabama, rather than the Eleventh Circuit Court of Appeal. Mr. Flowers filed an Unopposed Motion for Voluntary Dismissal of Appeal in the Eleventh Circuit Court of Appeal, which was dismissed August 3, 2007.

Mr. Flowers filed a motion for leave to file an appeal of his conviction and sentencing

judgment, and his appeal, with the District Court on July 27, 2007. On October 15, 2007, the District Court granted the motion for leave to file an appeal on October 15, 2007, based on Mr. Flowers' filing of his Notice of appeal with the clerk of the district court within ten days, in compliance with Federal Rule of Criminal Procedure 58(g)(2)(B). Mr. Flowers is currently imprisoned.

## II. STATEMENT OF THE FACTS

Mr. Flowers has been diagnosed with post-traumatic stress disorder, paranoid schizophrenia, and bipolar disorder, and is prescribed both Depakote and Seroquel for his disorders. (R2-4). While on supervised release between December 5, 2006, and January 15, 2007, Mr. Flowers was arrested and charged with violating the following criminal statutes: disorderly conduct, throwing an object into a moving vehicle, menacing, criminal mischief in the third degree, criminal trespassing in the third degree, and assault in the third degree. (R1-27). Throughout the revocation hearing, the District Court found Mr. Flowers to be competent to assist in his defense. (R2-55).

## III. ARGUMENT AND CITATIONS OF AUTHORITY

### A. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN SENTENCING MR. FLOWERS BECAUSE IT PROPERLY CONSIDERED MR. FLOWERS' MENTAL STATE AT THE TIME OF HIS SUPERVISED RELEASE VIOLATIONS AND THE SENTENCING FACTORS LISTED IN 18 U.S.C. § 3553(a).

The district court considered Mr. Flowers' mental state at the time of his supervised release violations and sentencing factors prior to sentencing, and therefore did not abuse its discretion. "[T]he ultimate decision to revoke probation is entrusted to the sound discretion of the district court and should be disturbed only upon a finding of abuse of that discretion." *United States v. Holland*, 874 F.2d 1470, 1473 (11th Cir. 1989). Here, the court was aware of Mr. Flowers' medical conditions, heard testimony from officers who arrested Flowers after his violations, heard testimony

3

from Mr. Flowers himself, considered appropriate sentencing factors, and sentenced Mr. Flowers accordingly. The court made appropriate findings of fact and adequately took into account the proper circumstances before sentencing. Thus, the court did not abuse its discretion.

    i.    <u>The District Court Was Within Its Discretion When It Considered Mr. Flowers' Mental State at the Time of His Supervised Release Violations and Did Not Find It to Be a Mitigating Circumstance Excusing His Noncompliance With Conditions of His Release.</u>

Upon hearing the testimony of two police officers, a probation officer, and Mr. Flowers himself at the revocation hearing, the district court found Flowers had committed five violations of the terms of his supervised release. District courts are given much discretion in revocation hearings such as this. "Further, in evaluating the decision to revoke probation, we will accept all findings of fact made by the district court unless we determine they are clearly erroneous." *Id.* Here, the district court did not clearly err in revoking Mr. Flowers' supervised release.

In *United States v. Holland*, the district court revoked the defendant's probation because he had not complied with his probation conditions; one of those conditions was that "he refrain from violation of any law (federal, state and local)." *Id.* at 1472. Mr. Flowers had the same mandatory condition as part of his supervised release. However, whereas the defendant in *Holland* violated this condition three times by continuing to engage in unauthorized environmental actions such as filling wetlands, Mr. Flowers violated this condition five times, with one of those violations being a felony offense.

Furthermore, the standard promulgated in *Holland* is whether the defendant made a "good faith" effort to comply with the terms of his probation. *Id.* at 1473. Mr. Flowers' probation officer, Mr. Brockett, testified at the revocation hearing that although he did not charge Mr. Flowers with any other violations during the period of supervised release, Flowers had not been the model defendant.

4

Mr. Brockett stated that Mr. Flowers had not called him within 72 hours of being arrested in December, nor had Mr. Flowers reported to him since October 2006. (R2-14). Mr. Brockett also testified that when he tried to locate Mr. Flowers because a warrant had been issued for his arrest after he threw a bottle into a moving vehicle, Mr. Brockett contacted Mr. Flowers' niece but was unable to locate him. This is because Mr. Flowers had been living one motel to the other, all the while lying and telling Mr. Brockett that he was living with his niece. (R2-17). Mr. Flowers was even noncompliant in jail, where he threw a breakfast tray and spilled food on an officer. (R2-8). These actions do not demonstrate a "good faith" effort to comply with the terms of supervised release, which Mr. Flowers knew and understood. (R2-11). What these actions do show, however, is Mr. Flowers' conscious disregard for those terms.

Finally, Mr. Flowers' mental state at the time of his supervised release violations was not such that it should excuse his noncompliance. Mr. Flowers did testify at his revocation hearing, against the advice of his counsel, to try to explain the circumstances of why he violated his supervised release conditions, and his explanations were confusing. Yet, according to Officer Mansfield, Mr. Flowers did not make any complaints about his mental health at the time of his arrest. (R2-33). More importantly, when the Government asked Mr. Flowers if he admitted to throwing a bottle into a vehicle in Daleville, Flowers responded, "Yes, I do." (R2-53). When the Government asked if Mr. Flowers realized he caused harm or damage to that vehicle, Flowers responded, "I damaged the windshield. I'm willing to pay for that. I did." (R2-53). Additionally, when the Government asked if Mr. Flowers admitted that he did not pay for a taxicab ride in Montgomery when he was found guilty of trespassing in the third degree, Mr. Flowers first said, "I won't comment on that," then reluctantly confessed, "I was not looking for money. Yes, I- I'll admit to that. Yes, I will." (R2-54). Mr. Flowers openly admitted that at the time of his offense, he purposely was not

5

looking for money to pay for his ride, though he knew he owed payment. The court heard and weighed all this testimony in addition to making a comment of its own, stating, "[T]here is nothing that I have heard to indicate that [Flowers] is not aware and competent to assist in his defense." (R2-55). Thus, the court considered Mr. Flowers' mental state and decided his behavior was not excusable under the circumstances.

The Court did not abuse its discretion when it heard testimony about Mr. Flowers' violations during supervised release and determined that his mental state did not negate his actions. After hearing Mr. Brockett's testimony, the Court could clearly reason that Mr. Flowers had not made a "good faith" effort to comply with his supervised release conditions. And after hearing Mr. Flowers' testimony about his cognizance at the time of his violations, the court could also reason that his mental state was not a mitigating circumstance that excused his noncompliance with the terms of supervised release. Having come to these conclusions, the Court did not abuse its discretion in revoking Mr. Flowers' supervised release.

    ii.    <u>The District Court Was Within Its Discretion When It Stated It Considered 18 U.S.C. § 3553(a) Sentencing Factors But Did Not Explicitly Discuss Those Factors Before Sentencing.</u>

Although the District Court did not explicitly discuss its consideration of the sentencing factors under 18 U.S.C. 3553(a), it was still within its discretion when it sentenced Mr. Flowers. "We now...squarely hold that nothing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005)(quoting *United States v. West*, 898 F.2d 1493, 1503 (11th Cir. 1990)). *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("a sentencing judge should set forth enough to satisfy the appellate court that he has

considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority").

In *United States v. Scott*, the record reflected the district court adequately considered the § 3553(a) sentencing factors when it simply mentioned the age of the child, explicitly acknowledged that it had considered Scott's arguments at sentencing, and explicitly stated it considered the factors set forth in § 3553(a). *Id.* In fact, the appellate court in *Scott* held that the district court just explicitly stating it considered the § 3553(a) factors was sufficient consideration in itself. *Id.* The Court in Mr. Flowers' case was much like the district court in *Scott*; it did not expound upon the § 3553(a) factors before sentencing. The Court here simply stated that it "considered and consulted Chapter 7 of the Sentencing Guidelines and evaluated the reasonableness of a sentence through the lens of 18, United States Code, Section 3553" before announcing its final sentence. (R2-60). According to the appeal from *Scott*, the District Court in this case had properly and adequately addressed the § 3553(a) factors by explicitly stating it had considered them; it needed to say nothing more.

Further examination of the record, however, shows that the District Court did have facts to weigh into the sentencing factors. First, the Court knew Mr. Flowers' criminal history category was a level five, and the level of his violations were determined to be grade B; this addresses Mr. Flowers' history and characteristics, as recommended by § 3553(a)(1). (R2-60). Second, the Court read each of the six charges against Mr. Flowers at the outset of the trial, thereby familiarizing itself with the nature and circumstances of the offenses, both also to be considered in sentencing according to § 3553(a)(1). (R2-5 - 8). The nature and circumstances of the offenses were further explained to the court by later testimony from two police officers and the probation officer. Finally, when the court sentenced Mr. Flowers for a term of twelve months, it recommended that Mr. Flowers be

designated to a facility where mental health treatment is available, thereby addressing § 3553(a)(2)(D) by trying to provide for medical and correctional treatment. (R2-60). The District Court was aware of and considered the § 3553(a) factors, though it was not required to outwardly explain them on the record. Thus, the Court was within its discretion when it revoked Mr. Flowers' supervised release and sentenced him to a term of twelve months.

B.  **THE SENTENCE THE DISTRICT COURT IMPOSED AGAINST MR. FLOWERS WAS REASONABLE AND FULFILLED THE PURPOSES OF SENTENCING.**

Sentencing Mr. Flowers to twelve months imprisonment was a reasonable sentence in this case, despite Mr. Flowers' arguments about his mental illness. District courts do not need to establish the reasonableness of the sentences they impose. Some indication in the record that the court adequately and properly considered appropriate factors in conjunction with the sentence will be sufficient. *United States v. Scott*, 426 F.3d. at 1329. The Court's sentence in this case follows the recommendation of the probation officer and the intentions of the Government, and it also fulfills the purposes of sentencing.

The court fulfilled the purposes of sentencing when it sentenced Mr. Flowers to twelve months imprisonment. An appropriate sentence should be fashioned so that it addresses the sentencing goals of rehabilitation, deterrence, protection of the public, training, and treatment. *United States v. Rodriguez*, 406 F.3d 1261, 1286 (11th Cir. 2003). Although the Court was made aware of Mr. Flowers' diagnoses of post-traumatic stress disorder, paranoid schizophrenia, and bipolar disorder, it had goals other than medical treatment in mind as well.

Mr. Brockett, the probation officer, recommended the twelve month maximum as punishment for Mr. Flowers because of his criminal history and the seriousness of the crimes that he committed. (R2-17). Mr. Flowers was found guilty of five charges, the most serious crime arguably being that

he threw a glass beer bottle directly at a moving vehicle onto the driver's windshield. (R2-37). To further aggravate the victim driver after he got out of his vehicle, Mr. Flowers then threatened him with a pocketknife. (R2-27). Also, the officers involved in apprehending Mr. Flowers testified that they struggled to get Mr. Flowers to cooperate with them at some point during each of Mr. Flowers' apprehensions. Although the court never *sua sponte* made a finding that Mr. Flowers is a danger to the public, when all of his violations are taken into consideration with their surrounding circumstances, the goal of public safety was not beyond the Court's concern.

The Court was also concerned about rehabilitation and deterrence when it sentenced Mr. Flowers. When the Court sentenced Mr. Flowers to imprisonment for twelve months, it recommended that the Federal Bureau of Prisons designate him to a facility where mental health treatment was available, for purposes of rehabilitation. (R2-60). By sentencing Mr. Flowers to a term of imprisonment rather than extending his supervised release to give him yet another chance, the Court is providing general deterrence for defendants who have the same privilege of supervised release as Mr. Flowers had. Also, the Court is providing specific deterrence to Mr. Flowers for violating a condition of his supervised release. In *Holland*, when the defendant was found to have violated the same mandatory condition as Mr. Flowers, the appellate court agreed with the district court for revoking Holland's supervised release. "In light of the evidence demonstrating Holland's continuing violation of federal and state environmental laws, especially given that adherence to these laws was a specific condition of his probation, we cannot conclude that the district court abused its discretion in revoking Holland's probation." *United States v. Holland*, 874 F.2d at 1474. In the same manner as Holland, Mr. Flowers violated the conditions of his supervised release, and to specifically deter any further violations, the District Court decided to impose a sentence of twelve months imprisonment.

Rather than imprisonment, Mr. Flowers requested a term of supervised release at a local mental health facility or an even shorter term of supervised release if the designated mental health facility was out of the area. His counsel argued that this punishment would not unreasonably deprive Mr. Flowers of the liberties that would be restricted if he were imprisoned. Courts do not have to be amenable to this argument, however. In *Holland*, the defendant suggested that the district court could have chosen a less restrictive alternative than continued probation with special conditions to accomplish the same sentencing goals. *Id.* The appellate court acknowledged that the district court could have taken Holland's recommendation for punishment, but it held that the district court's decision is reviewed only to determine an abuse of discretionary authority, and the district court in that case did not abuse its discretion when it chose a more restrictive condition than Holland would have liked. *Id.* at 1473. Likewise for Mr. Flowers, a twelve month prison sentence served the intentions of the Court, despite this punishment being more restrictive than what Mr. Flowers requested.

Finally, although Mr. Flowers argues that the Government agreed in recommending further supervised release rather than imprisonment, when viewed in the context of the Government's questioning of witnesses and complete closing argument, it is clear that counsel for the Government simply misspoke. When the Government asked Mr. Brockett for his recommendation given Mr. Flowers' history and violations, Mr. Brockett recommended the maximum, due to his criminal behavior and the seriousness of the crimes committed. (R2-17). The Government then asked what the maximum was, for clarification. Mr. Brockett responded, "12 months in [sic] the statutory maximum." (R2-18). However, when the Government gave its closing statement, it stated that Mr. Flowers warranted "the need for- for further- not confinement, but further close supervision." (R2-57). The Government then finished by saying, "[T]he Government requests that [Flowers'] current

condition- or that his current term of supervised release be revoked and that he do- or that he continue to be placed in probation for an additional 12 months." (R2-57 - 58).

When viewed in the totality of the Government's line of questioning and argument, however, counsel for the Government did not disagree with Mr. Brockett's recommendation for twelve months imprisonment, nor did counsel intend to ask that the current term of supervised release be revoked only to request an additional twelve months of probation, which is plainly contradictory. Counsel for Mr. Flowers cannot justifiably rely on the Government's choice of words or mere misspeaking, because in his closing statement, when Mr. Butler asked the Court to reduce any potential penalties for time previously served, Mr. Butler said, "whether it be a sentence of six months, seven months, or as the Government recommends, 12 months." (R2-59). It is clear that no weight should be given to the argument that the Government recommended further supervised release in its closing statement; all parties present in the courtroom, including counsel for Mr. Flowers, clearly understood that the Government was arguing that Mr. Flowers' supervised release be revoked, and that he be sentenced to twelve months imprisonment as punishment for his supervised release violations.

## CONCLUSION

For the reasons set forth above, this Court should deny Mr. Flowers' appeal to vacate the revocation of his supervised release and sentence.

Respectfully submitted this 19th day of December, 2007.

                        LEURA G. CANARY
                        UNITED STATES ATTORNEY

                        /s/ Emily M. Ruisanchez
                        EMILY M. RUISANCHEZ
                        Special Assistant United States Attorney
                        Soldier Service Center, Bldg. 5700
                        Fort Rucker, Alabama 36362
                        Telephone: (334) 255-9141
                        Fax: (334) 255-1869
                        E-mail: emily.ruisanchez@us.army.mil
                        Georgia Bar: 142573

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No: 1:05-CR-00050-WKW & |
| | ) | 1:05-CR-00118-WKW |
| CALVIN FLOWERS | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. Kevin L. Butler, Attorney for Mr. Calvin Flowers, and I hereby certify that I have mailed by United States Postal Service the foregoing to the last-known address of the following non-CM/ECF participants: Mr. Calvin Flowers, Coleman I, 09518-002, U.S. Penitentiary, Inmate Mail/Parcels, P.O. Box 1033, Coleman, FL 33521.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Emily M. Ruisanchez
EMILY M. RUISANCHEZ
Special Assistant United States Attorney
Soldier Service Center, Bldg. 5700
Fort Rucker, Alabama 36362
Telephone: (334) 255-9141
Fax: (334) 255-1869
E-mail: emily.ruisanchez@us.army.mil
Georgia Bar: 142573