IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CR. No.: 1:05CR50-CSC & |
| | ) | 1:05CR118-CSC |
| CALVIN FLOWERS | ) | |

**REPLY TO GOVERNMENT RESPONSE TO APPEAL OF CONVICTION
AND SENTENCING JUDGEMENT**

**I.   ARGUMENT AND CITATIONS OF AUTHORITY**

   **A.   The District Court Erred in Failing to Find Mr. Flowers' Mental Illness as a Mitigating Circumstance That Excused His Non-compliance with the Conditions of His Supervised Release.**

The government argues that the "district court did not clearly err in revoking Mr. Flowers' supervised release,' because Mr. Flowers' "actions [did] not demonstrate a 'good faith' effort to comply with the terms of supervised release, which Mr. Flowers knew and understood." (Doc. 47, p. 4, 5). The "good faith' standard has been applied in cases involving diverse kinds of supervised release and probation violations. See *United States v. Savage,* 440 F.2d 1237(5th Cir. 1971)(where a probationer was charged with violating the conditions of his probation for failing to pay restitution); *United States v. Holland*, 874 F.2d 1470 (11th Cir. 1989)(where a probationer was charged with violating the conditions of his probation for failing to cease engaging in maritime contracting); and *United States v. Connally*, 2007 WL 1265942 (11th Cir. 2007)(where the appellant was charged with violating the conditions of his supervised release for failing to report, lying, failing to produce evidence of employment, and for leaving the jurisdiction and associating with convicted felons without permission). However, none of these cases involved individuals that were mentally

1

ill at the time of their violations.

Mr. Flowers suffers from post-traumatic stress disorder, paranoid schizophrenia, and bipolar disorder. (R2-3-4). These mental illnesses effect his mood, actions, and volition. "Bipolar mood disorder is better known as manic depressive mental illness. Bipolar mood disorders are characterized by wide changes in mood or mood swings. During the manic phase, the person can be loud, angry, violent, or grandiose. At the other extreme, the person [may] experience periods of extreme depression." *Bundy v. Dugger*, 850 F.2d 1402, 1409, n.6 (11th Cir. 1988)( description of bipolar disorder by the Eleventh Circuit in a capital habeas case where the Court was determining whether the disorder was manifesting itself in the appellant to the extent that it affected his competence to stand trial). *See also* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 179-190 (4th ed. 2000).

The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") states that schizophrenia is characterized by two or more of the following: "(1) delusions, (2) hallucinations, (3) disorganized speech (e.g., frequent derailment or incoherence), (4) grossly disorganized or catatonic behavior, (5) negative symptoms, i.e., affective flattening, alogia, or avolition." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 153 (4th ed. 2000). Paranoid schizophrenia is defined as "[a] type of schizophrenia in which the following criteria are met: A. Preoccupation with one or more delusions or frequent auditory hallucinations." *Id.,* at 155.

Mr. Flowers testified at his revocation hearing that he had been experiencing visual hallucinations on the day of his violations. (R2-52). He testified that be believed people, including the guards at the city jail, were trying to kill him. (R2- 46- 52)( stating "these people in Daleville, they tried to strangle me and kill me;" "I got hit by a car. And when the car hit me, I heard the car

turn around. I got in the bushes, and this guy came back and got out of the car with a gun. And I was hiding in the bushes, and I was not going up that road."). His testimony at the revocation hearing was confusing and disorganized. The government acknowledges that Mr. Flowers provided confusing explanations for his behavior during his revocation hearing testimony. (Doc. 47, p.5). The hallucinations, delusions, disorganized speech, and actions taken and exhibited by Mr. Flowers at the time of his violations and at the time of his revocation hearing exemplify behaviors associated with his mental illness. Thus, although Mr. Flowers may have understood the terms of his supervised release, the mental illnesses from which he suffers prevented him from rationally and consciously disregarding those terms at the time of his violations.

The government asserts that "Mr. Flowers' mental state at the time of his supervised release violations was not such that it should excuse his noncompliance." (Doc. 47, p. 5). In support of this assertion, the government references Mr. Flowers' admissions to throwing a bottle into a vehicle, and failing to pay for a taxi cab ride. (Doc. 47, p. 5). Mr. Flowers' does not dispute his admissions to this conduct. In fact, Mr. Flowers' appeal brief points out these admissions in detail, stating "Mr. Flowers did not dispute that he committed some of the acts alleged in the petition to revoke his supervised release. (R2-53)." (Doc. 37, p.5). However, in pointing out Mr. Flowers' admissions, the government improperly takes his testimonial admissions out of context, and neglects to also reference the paranoid delusions that Mr. Flowers testified to as the reasons for his behavior. The government also neglects to reference the testimony concerning Mr. Flowers' physical and mental condition at the time that he failed to pay a taxicab driver.

Specifically, the government's brief provides,

More importantly, when the Government asked Mr. Flowers if he admitted to

>throwing a bottle into a vehicle in Daleville, Flowers responded, "Yes, I do." (R2-53). When the Government asked if Mr. Flowers realized he caused harm or damage to that vehicle, Flowers responded, "I damaged the windshield. I'm willing to pay for that. I did." (R2-53).

(Doc. 47, p. 5). However, the government has omitted from its citation to this testimony the fact that Mr. Flowers also testified to his delusion that the man in the vehicle was trying to harm him.

>Q.: With - - with the incident out in Daleville involving the bottle, do you admit that you threw the bottle at the maroon vehicle?
>A.: Yes, I do.
>Q.: Okay. Do you realize that you caused harm or damage to that vehicle?
>A.: I damaged the windshield. I'm willing to pay for that. I did.
>Q.: Okay
>**A. But I thought this guy was about to run me over.**

(R2-53).(emphasis added). Furthermore, Mr. Flowers testified prior to cross-examination, "I want to say that I threw the bottle in protection of myself, because I believed that I was about to get run over." (R2-45-46). Mr. Flowers stated, "Because the car veered in my direction, and I was walking on the grass. And I was not drinking. . . . And the car veered in my direction, and I threw one bottle into the windshield of the car to blind the guy's vision." (R2-46).

>The government's brief provides,
>
>Additionally when the Government asked if Mr. Flowers admitted that he did not pay for a taxicab ride in Montgomery when he was found guilty of trespassing in the third degree, Mr. Flowers first said, "I won't comment on that," then reluctantly confessed, "I was not looking for money. Yes, I-I'll admit to that. Yes, I will." (R2-54).

(Doc. 47, p.5). However, the government omits Mr. Flowers' explanation for his actions, that being that he was in physical pain at the time of this incident due to his being hit by car prior to getting into the cab.

>A.: I was willing to pay for - - I wasn't going anywhere. I told the man that I would pay for him as soon as I found out where my money was. **And I was in very - - I was hurting.**

4

> Q.: Okay so you - -
> A.: I was not looking for money. Yes, I - - I'll admit to that. Yes, I will.

(R2-54). (emphasis added). Additionally, Mr. Flowers testified prior to cross examination that after leaving Baptist hospital where he received treatment for his injuries, his wallet was missing and he was disoriented.

> I rode a cab to the VA. And I laid down in the back of the cab. And I don't even know where my money was or my wallet. I think - - and even the - - I think the Tuskegee security guards had my - - my Visa card, and I think its still there. But anyway, I had some money somewhere, but I don't know where it was. I had been hit by a car, and I don't know. I wasn't concerned about paying anybody. They should have took me from the hospital because they - - the tests - - the x-rays came up where I was fractured in my right leg and - -

(R2-50-51). By isolating these quotes and taking Mr. Flowers' testimony out of context, the government has unfairly mischaracterized Mr. Flowers' testimony and improperly omitted testimonial evidence that clearly shows that Mr. Flowers' paranoid delusions and physical injuries were effecting his volition and attempts at rational thought.

In further support of its assertion that Mr. Flowers' mental illness does not excuse his noncompliance with the terms of his supervised release, the government asserts that "Mr. Flowers did not make any complaints about his mental health at the time of his arrest." (Doc. 47. p. 5). Mr. Flowers' failure to complain about his mental illness to police on the day of his arrest neither negates the affect of mental illness on his volition, nor negates the presence of his mental illnesses as a valid excuse for his non-compliance with the terms of his supervised release. The government cites no case law that requires an individual to verbalize a complaint about his mental illness at the time of a release violation before his mental illness can be attributed as an excuse for his non-compliance with supervised release terms. In addition, Mr. Flowers testified at his revocation hearing that on

the day of his violations he was suffering from hallucinations and he needed help. Specifically, he stated that "there were these strange things that were looking – were looking at me, you know. I went to Tuskegee because I thought maybe I was hallucinating. And there were strange things going on, and I needed some help." (R2-52).

The government argues that "after hearing Mr. Flowers' testimony about his cognizance at the time of his violations, the court could also reason that his mental state was not a mitigating circumstance that excused his noncompliance with the terms of supervised release." (Doc. 47, p. 6). However, the court never considered whether Mr. Flowers' mental illness was a mitigating circumstance in his case. When defense counsel specifically argued that Mr. Flowers' supervised release should not be revoked because, "Mr. Flowers did not understand the nature of his conduct or appreciate its wrongfulness and was not sane at the time of the offense" (R2- 56), the district court never addressed this argument. Instead, this court only discussed Mr. Flowers' sanity within the context of whether he was competent to proceed with a revocation hearing. The court's failure to properly consider and/or address Mr. Flowers' mental illness as a mitigating circumstance which excused his release violations was an abuse of discretion.

    **B.**    **Mr. Flowers' Never Asserted That the District Court's Singular Mentioning of the 18 U.S.C. §3553 Factors Prior to Sentencing Was an Abuse of Discretion.**

The government allocates a considerable portion of its brief arguing that "the district court was within its discretion when it stated it considered 18 U.S.C. 3553(a) sentencing factors but did not explicitly discuss those factors before sentencing." (Doc. 47, p. 6-8). However, Mr. Flowers has never asserted that the district court's singular mentioning of the 18 U.S.C. §3553 factors prior to sentencing was in error. In fact, Mr. Flowers' appeal brief addresses this court's consideration of

the §3553(a) factors only once.

> The court did not discuss its consideration of the factors under acknowledgment U.S.C. §3553(a), except to say that it had "evaluated the reasonableness of [the] sentence through the lens of 18 United States Code Section 3553." (R2-60). FN3.
>
>> FN3.: This court has held that "when revocation of supervised release is mandatory under 18 U.S.C. § 3583(g), the statute does not require consideration of the § 3553(a) factors." *United States v. Brown*, 224 F.3d 1237, 1241 (11th Cir. 2000). United States Sentencing Guideline §7B1.3(a)(1) mandates that supervised release be revoked upon a finding of a grade B violation. This court found Mr. Flowers guilty of a grade B violation.
>
> This court also did not provide any discussion concerning its consideration of any facts, mitigating circumstances, or legal principles prior to revoking release, other than its singular mentioning of U.S.S.G. §7B1.1 and 18 U.S.C. §3553(a). (R2- 58-61).

(Doc. 37, p. 3-4). Thus, Mr. Flowers' brief specifically provides that the law of the Eleventh Circuit did not require this court to consider the §3553(a) factors because Mr. Flowers' had been found guilty of a grade B violation.

Mr. Flowers' principle appeal arguments have always been that the district court erred by (1) failing to consider Mr. Flowers' insanity at the time of his supervised release violations as a mitigating circumstance that excused his supervised release violations, and (2) imposing a sentence of imprisonment that was greater than necessary. (Doc. 37). Thus, the government's arguments concerning this court's consideration of the § 3553(a) factors are wholly erroneous and will not be further addressed in this reply.

  **C.**  **The Sentence Imposed in this Case Was Excessive.**

In arguing that the sentence imposed in this case was reasonable, the government asserts that "[d]istrict courts do not need to establish the reasonableness of the sentences they impose. Some

indication in the record that the court adequately and properly considered appropriate factors in conjunction with the sentence will be sufficient." (Doc. 47, p. 8). This assertion is erroneous. 18 U.S.C. § 3553(c)(1) clearly states that a district court is <u>required</u> to state, in open court, the reason for imposing a particular sentence. This statement of reasons is reviewed by a court of appeals during its overall review of a sentence for reasonableness. *See United States v. Talley*, 431 F.3d 784, 785 (11th Cir.2005)(stating, "We review a sentence imposed by the district court for reasonableness."). Although "[a] district court may impose a sentence that is either more severe or lenient than the sentence [the Court of Appeal] would have imposed, [ ] that sentence must still be reasonable." *Id.,* at 788. Thus, a district court must establish the reasonableness of its sentence in order to withstand scrutiny on appeal.

      The government argues that the twelve month term of imprisonment imposed in this case "served the intentions of the Court, despite this punishment being more restrictive than what Mr. Flowers requested." (Doc. 47, p. 10). However, it is the restrictiveness of the sentence that makes the sentence greater than necessary to achieve the purposes of sentencing. 18 U.S.C. §§3583(e), which addresses modification of conditions and revocation of supervised release, "contemplate[s] that reimprisonment is not the only possible punishment for violation of post-release supervision. Specifically, [a] court may 'extend a term of supervised release,' §3583(e)(2), and/or 'order the defendant to remain at his place of residence during nonworking hours,' §3583(e)(4)." *United States v. Cenna*, 448 F.3d 1279, 1281(11th Cir. 2006). Adequate punishment for Mr. Flowers' failure to follow the conditions of his supervised release, in light of his mental illness, could have been achieved by either (1) extending his term of supervised release under electronic monitoring with the condition that he receive mental health treatment, or by (2) extending his term of supervised release

while confined to a residential mental health facility. Yet, this court sentenced Mr. Flowers to two concurrent twelve month terms of imprisonment with the recommendation that Mr. Flowers be designated to a prison that offers mental health and drug counseling. (R2- 60). This was the most restrictive punishment that the court could impose, although there clearly were alternative sentences that would have been less restrictive and still met the goals of sentencing. Thus, the sentence was greater than necessary.

## CONCLUSION

For the reasons set forth above, Calvin Flowers' revocation of supervised release and sentence must be vacated and this matter remanded to the United States District Court for the Middle District of Alabama

Respectfully submitted,

**s/ Kevin L. Butler**
KEVIN L. BUTLER
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CR. No.: 1:05CR50-CSC & |
| | ) | 1:05CR118-CSC |
| CALVIN FLOWERS | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2007, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

Emily M. Ruisanchez, Esq.
Special Assistant U.S. Attorney
Soldier service Center, Bldg. 57000
Fort Rucker, Alabama 36362

                                    Respectfully submitted,

                                    **s/ Kevin L. Butler**
                                    KEVIN L. BUTLER
                                    First Assistant Federal Defender
                                    201 Monroe Street, Suite 407
                                    Montgomery, Alabama 36104
                                    Phone: (334) 834-2099
                                    Fax: (334) 834-0353
                                    E-mail: kevin_butler@fd.org
                                    AZ Bar Code: 014138